# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JAMES ARNOLD LEWIS,**

    Petitioner,

  v.                                                     Case No. 18-CV-352

**GARY BOUGHTON,**

    Respondent.

---

# DECISION AND ORDER
# DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

James Arnold Lewis was charged in Wisconsin state court with sexually assaulting his girlfriend's six-year-old daughter on multiple occasions, convicted by a jury, and sentenced to thirty-six years' imprisonment. After his direct appeal concluded, Mr. Lewis filed a state collateral attack, arguing that his request for new counsel should have been granted and bringing new claims of ineffective assistance of trial and appellate counsel. The state courts held that Mr. Lewis's claims were procedurally barred because they could have been raised during his direct appeal and because Mr. Lewis failed to provide a sufficient reason for not pursuing them in that earlier proceeding. Mr. Lewis is currently serving his sentence at the Wisconsin Secure Program Facility.

In March 2018, Mr. Lewis filed a federal habeas petition alleging that his custody violates the Sixth and Fourteenth Amendments to the United States Constitution. Gary Boughton, Warden of the Wisconsin Secure Program Facility,

argues that Mr. Lewis's petition should be dismissed because all of its claims are procedurally defaulted, and Mr. Lewis cannot excuse his defaults. The Court agrees. Because the state courts expressly relied on adequate and independent state grounds to reject Mr. Lewis's claims, and because Mr. Lewis has failed to provide a sufficient excuse for his default, this Court is procedurally barred from reaching the merits of those claims on federal habeas review. The Court therefore will deny Mr. Lewis's petition.

I. Background

A. Circuit Court proceedings

In January 2012, James Lewis was charged in Milwaukee County Circuit Court with sexually assaulting L.M.A., his girlfriend's six-year-old daughter. *See* Exhibit 106 to Petitioner's Reply Brief Addressing Procedural Default, ECF No. 23-1 at 55–56. Specifically, the State of Wisconsin charged Mr. Lewis with four counts of first-degree sexual assault of a child, all occurring between August 17, 2011, and December 29, 2011. *Id.* Mr. Lewis was charged in Counts 1, 2, and 3 with assaulting L.M.A. at her "granny's house," located on North 77th Court in the City of Milwaukee. *See id.*; *see also* Exhibit 3 to Respondent's Response Brief Addressing Procedural Default, ECF No. 21-3 at 11. Count 4 charged Mr. Lewis with assaulting L.M.A. at an apartment she and her family briefly lived in on West Silver Spring Drive in Milwaukee. *See* Pet'r's Reply Ex. 106, ECF No. 23-1 at 56.

The case proceeded to trial. The jury heard testimony from L.M.A., L.M.A's mother, other members of L.M.A.'s family, Mr. Lewis, police officers, and a health

2

care provider. *See* Exhibit 1 to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody, ECF No. 1-1 at 2; *see also State v. Lewis*, Appeal No. 2014AP1824-CR, 2015 Wisc. App. LEXIS 489, at *2 (Wis. Ct. App. July 7, 2015). At the close of the State's case, the trial court granted the State's motion to amend the location of Count 4 to "a motel, in the City of Milwaukee." *See* Pet'r's Reply Ex. 106, ECF No. 23-1 at 58. The parties also agreed to use August 1, 2011, as the amended starting date for all four counts. *See* Pet. Ex. 1, ECF No. 1-1 at 3. The Amended Information, however, was not read to the jury. *See id.* at 3–4.

After deadlocking on Count 4, the jury requested to review a videotaped interview of L.M.A. that was conducted shortly after she disclosed the assaults in December 2011. *Id.* at 4. The parties agreed this was permissible, and so the jury re-watched a portion of L.M.A.'s interview. The jury subsequently found Mr. Lewis guilty of all four counts. He was sentenced to a total of twenty-six years of initial confinement and ten years of extended supervision.

### B. Post-conviction proceedings

On direct appeal, Mr. Lewis argued "that he should receive a new trial because several errors in the verdicts and jury instructions denied him the right to a unanimous verdict." Pet. Ex. 1, ECF No. 1-1 at 4 (citation omitted). The Wisconsin Court of Appeals rejected this argument and affirmed Mr. Lewis's judgment of conviction. *See id.* at 5–9. The Wisconsin Supreme Court denied Mr. Lewis's petition for review. *See id.* at 10. Mr. Lewis did not file a petition for certiorari with the

3

United States Supreme Court. *See* Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody 4, ECF No. 1.

In August 2016, Mr. Lewis filed a pro se motion for post-conviction relief pursuant to Wis. Stat. § 974.06. *See* Exhibit 1 to Resp't's Br., ECF No. 21-1. Mr. Lewis argued that the trial court erred in denying his request for new counsel, his trial lawyer provided ineffective assistance of counsel in multiple ways, and his post-conviction lawyer provided ineffective assistance by failing to allege that trial counsel performed deficiently. *Id.* The Circuit Court denied the motion without a hearing. *See* Exhibit 2 to Resp't's Br., ECF No. 21-2. The Wisconsin Court of Appeals affirmed, finding that Mr. Lewis "[had] not identified a basis to overcome application of the ***Escalona-Naranjo*** bar to his WIS. STAT. § 974.06 motion." *See* Exhibit 4 to Resp't's Br., ECF No. 21-4 at 6. Thereafter, the appellate court denied Mr. Lewis's motion for reconsideration, Pet. Ex. 1, ECF No. 1-1 at 25, and the Wisconsin Supreme Court denied Mr. Lewis's petition for review, *id.* at 26.

In February 2018, Mr. Lewis filed a second motion for post-conviction relief, this time claiming that newly discovered evidence warranted a new trial. *See id.* at 27. The purported new evidence consisted of: (1) a letter from the Salvation Army indicating that L.M.A. and her family had stayed in an emergency shelter from August 2, 2011, until September 1, 2011; (2) a copy of a motel receipt issued to Mr. Lewis from the Midpoint Motel for the dates of September 2, 2011, to September 9, 2011; and (3) a copy of Milwaukee County Jail booking records reflecting that Mr. Lewis was in custody from September 3, 2011, until September 19, 2011. *See*

4

Exhibit 11 to Resp't's Br., ECF No. 21-11. The Circuit Court denied the motion, finding that Mr. Lewis was negligent in failing to seek this "new" evidence prior to filing his first pro se motion and that Mr. Lewis failed to demonstrate that he likely would have been acquitted if the evidence had been presented at trial. *See* Pet. Ex. 1, ECF No. 1-1 at 27–28. Mr. Lewis did not seek further review of that decision. *See* Pet. 5.

### C. Habeas proceedings

On March 7, 2018, Mr. Lewis filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is in custody in violation of the United States Constitution because his trial lawyer provided ineffective assistance of counsel and his due-process rights were violated in various respects. *See* Pet. 6–9; *see also* Attachment to Pet., ECF No. 1 at 10–18. Specifically, Mr. Lewis alleged eleven different grounds for relief:

> (1) The court erred when it forced Lewis to go to trial with an attorney in which Lewis had irreconcilable differences.
>
> (2) Lewis was denied effective assistance of counsel . . . when trial counsel failed to object when the State requested to amend the location of count 4.
>
> (3) Trial counsel was ineffective when he failed to seek out and to present exculpatory evidence that would have shown Lewis to be in jail during the time he was accused of sexually assaulting LMW in the motel.
>
> (4) Lewis was denied effective assistance of counsel . . . when trial counsel failed to request an adjournment or mistrial after the State was allowed to amend count 4.

(5) Lewis was denied due process of law . . . , as well as the right to effective assistance of counsel . . . when trial counsel alluded to Lewis's guilt during his opening statement.

(6) Lewis was denied the right to effective assistance of counsel when trial counsel brought out testimony, on cross-examination, used by the State to bolster its case.

(7) Lewis was denied due process of law . . . when the Court failed to read the amended Count Four to the jury . . . ; as well as the right to effective assistance of counsel . . . when trial counsel failed to object to the amended information not being read.

(8) Lewis was denied effective assistance of counsel when trial counsel failed to present witnesses at trial because he subpoenaed the witnesses for the date after the trial ended.

(9) Lewis was denied effective assistance of counsel when his attorney failed to conference with him.

(10) Lewis was denied due process of the law . . . , as well as ineffective assistance of counsel when the jurors were allowed to listen to the wrong portion of the forensic video.

(11) Lewis was denied due process of law . . . when the Circuit Court made its ruling to deny Lewis's Wisconsin Stat. § 974.06 motion, based upon an unreasonable determination of the facts.

*Id.* The matter was randomly assigned to this Court, and all parties consented to magistrate judge jurisdiction. *See* Consent to Proceed Before a Magistrate Judge, ECF Nos. 9, 16 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)).

Upon screening the Petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court determined that all eleven claims appeared to be procedurally defaulted. *See* Order to Show Cause, ECF No. 10. The Court thus ordered Mr. Lewis to show cause why his Petition should not be dismissed as procedurally barred. Mr. Lewis responded to the Court's

6

show-cause order on April 24, 2018. *See* Petitioner's Response to Order to Show Cause, ECF No. 12. Based on that response, the Court ordered the respondent, Gary Boughton, to weigh in on the procedural default issue. *See* Order on Rule 4 Review, ECF No. 13. Mr. Lewis subsequently requested a hearing on the merits of his Petition. *See* Petitioner's Request for an Evidentiary Hearing, ECF No. 18. On July 30, 2018, Mr. Boughton responded to the procedural default issue and the request for an evidentiary hearing. *See* Respondent's Response Brief Addressing Procedural Default, ECF No. 21. Mr. Lewis filed a reply brief on August 14, 2018. *See* Petitioner's Reply Brief Addressing Procedural Default, ECF No. 23.

Mr. Lewis has also filed (1) a Motion to Amend Reply Brief, ECF No. 24; and (2) a Motion to Correct, ECF No. 25. Mr. Boughton has not submitted a response to these motions, and the time to do so has now passed, *see* E.D. Wis. Civ. L. R. 7(b).

## II. Discussion

Mr. Boughton argues that the Petition should be dismissed because all of Mr. Lewis's claims are procedurally defaulted. In response, Mr. Lewis appears to concede that his claims are defaulted. He nevertheless maintains that his default should be excused and that the Court should address the merits of his claims.

### A. Whether Mr. Lewis's claims are procedurally defaulted

"The procedural default doctrine . . . normally will preclude a federal court from reaching the merits of a habeas claim when . . . that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds." *Perruquet v. Briley*, 390 F.3d 505,

7

514 (7th Cir. 2004) (citations omitted). "A state procedural ground is independent if it was expressly relied on by the state court in rejecting the claim, and it is adequate if it is a clearly established and consistently followed state practice at the time it is applied." *Johnson v. Thurmer*, 624 F.3d 786, 789 (7th Cir. 2010) (citing *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991); *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010)).

Grounds One through Ten of Mr. Lewis's habeas petition were raised in his Wis. Stat. § 974.06 first post-conviction motion. *See* Resp't's Br. Ex. 1, at 2–17. In affirming the denial of that motion, the Wisconsin Court of Appeals—the last state court to issue a reasoned opinion—relied on *State v. Escalona-Naranjo*, *State ex rel. Rothering v. McCaughtry*, and *State v. Romero-Georgana*. *See* Resp't's Br. Ex. 4. These cases hold that (1) absent a "sufficient reason," a defendant cannot bring a claim in a Wis. Stat. § 974.06 motion that could have been raised on direct appeal or in a Wis. Stat. § 974.02 motion, *State v. Escalona-Naranjo*, 517 N.W.2d 157, 164 (Wis. 1994); (2) ineffective assistance from post-conviction counsel may constitute a sufficient reason for not raising a claim in an earlier proceeding, *State ex rel. Rothering v. McCaughtry*, 556 N.W.2d 136, 139 (Wis. Ct. App. 1996); and (3) when post-conviction counsel's ineffectiveness is alleged as the sufficient reason, the defendant must show that his issues are "clearly stronger" than the issues post-conviction counsel did raise, *State v. Romero-Georgana*, 849 N.W.2d 668, 679 (Wis. 2014).

8

Applying these three principles, the Wisconsin Court of Appeals determined that Mr. Lewis was not entitled to a hearing on his post-conviction motion because he failed to "sufficiently allege how his unraised issues [were] clearly stronger than those postconviction/appellate counsel chose to pursue." Resp't's Br. Ex. 4, ECF No. 21-4 at 4. The appellate court therefore "'clearly and expressly' relied on procedural default as the basis of its ruling." *See Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002) (quoting *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000)). Those procedural grounds also were adequate. Indeed, the Seventh Circuit has already determined that the procedural bar created by *Escalona-Naranjo* (and its progeny) constitutes an adequate and independent state-law ground of procedural default. *See Perry*, 308 F.3d at 690 (citing *Liegakos v. Cooke*, 106 F.3d 1381 (7th Cir. 1997)).

As to Ground Eleven, Mr. Lewis first raised this claim in appealing the denial of his § 974.06 motion. *See* Resp't's Br., Ex. 3 at 31–32. Thus, it was not subject to the Wisconsin Court of Appeals' application of *Escalona-Naranjo*. But this claim was still rejected on procedural grounds. Given its finding that Mr. Lewis was not entitled to a hearing, the appellate court declined to consider "Lewis's appellate argument that the trial court's analysis included misinterpretations of the factual record" because "[a]n appellate court should decide cases 'on the narrowest possible ground[s].'" Resp't's Br. Ex. 4, ECF No. 21-4 at 6 n.3 (quoting *State v. Blalock*, 442 N.W.2d 514, 520 (Wis. Ct. App. 1989)).

The rule the Wisconsin Court of Appeals relied on to reject Mr. Lewis's final claim is both independent and adequate. The appellate court explicitly stated that it

9

was not addressing the merits of the claim because of the state procedural rule. And the rule was clearly established and consistently followed in Wisconsin at that time. *See, e.g., Ehlinger v. Hauser*, 785 N.W.2d 328, 341 (Wis. 2010) (citing *Blalock*, 442 N.W.2d at 520); *State v. Bvocik*, 781 N.W.2d 719, 726 n.5 (Wis. Ct. App. 2010) (same).

Accordingly, the Court finds that all eleven grounds raised in Mr. Lewis's federal habeas petition are procedurally defaulted because they were resolved on adequate and independent state procedural grounds.

### B. Whether Mr. Lewis's procedural default should be excused

"The procedural default doctrine does not impose an absolute bar to federal relief." *Perruquet*, 390 F.3d at 514. Federal courts may consider the merits of procedurally defaulted claims if the "petitioner can demonstrate both cause for and prejudice stemming from that default *or* he can establish that the denial of relief will result in a miscarriage of justice." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (citations omitted). Mr. Lewis attempts to show both here.

#### 1. Cause + prejudice

To show cause for a procedural default, Mr. Lewis "must demonstrate that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)). "Prejudice is established by showing that the violation of the petitioner's federal rights 'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of

10

constitutional dimensions.'" *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Mr. Lewis presents five potential sources of cause: (1) the Circuit Court's denial of his post-conviction motion was based on an unreasonable determination of the facts; (2) the Circuit Court erred in finding that his claims were procedurally barred; (3) the Wisconsin Court of Appeals erred when it determined that he presented "only conclusory allegations" in his post-conviction motion; (4) the state court's "clearly stronger" standard conflicts with *Strickland v. Washington*; and (5) the state-court's application of the wrong standard was not harmless. *See* Pet'r's Br. 3–18. These factors, however, are insufficient to overcome Mr. Lewis's defaults.

*Unreasonable determination of the facts*

This potential source of cause is easily disposed of. On habeas review, district courts must look only to "the 'last reasoned state-court decision' to decide the merits of the case." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc) (quoting *Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013)). The last-reasoned state-court decision in this case was made by the Wisconsin Court of Appeals. *See* Resp't's Br. Ex. 4. Consequently, the Circuit Court's reasoning in denying Mr. Lewis's postconviction motion is irrelevant. Moreover, whether the state-court's decision was based on an unreasonable determination of the facts is really a merits-based argument under 28 U.S.C. § 2254(d)(2). As Mr. Boughton persuasively argued, allowing proof of success on the merits to excuse a default would render the

11

procedural-default doctrine meaningless because then it would apply only to losing claims. Mr. Lewis has not provided any authority to support such an illogical result.

*State-court error*

Mr. Lewis's disagreement with the state-court's application of its procedural rules also does not constitute cause. "In assessing the adequacy of a state procedural ruling, federal courts do not review the merits of the state court's application of its own procedural rules." *Crockett v. Butler*, 807 F.3d 160, 167 (7th Cir. 2015) (citing *Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014)). Rather, federal review is limited to determining "whether the rule invoked was 'firmly established and regularly followed.'" *Crockett*, 807 F.3d at 167 (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)). As described above, the state courts expressly relied on the *Escalona-Naranjo* procedural bar and that rule was clearly established and regularly followed at the time of those decisions. Whether those courts correctly applied *Escalona-Naranjo* is not subject to review under § 2254.

*Wisconsin's clearly stronger standard*

Under Wisconsin law, a defendant arguing ineffective assistance of appellate counsel to escape *Escalona-Naranjo*'s procedural bar must show that the issues he wants to raise are "clearly stronger" than the issues appellate counsel chose to pursue. *See Romero-Georgana*, 849 N.W.2d at 679. Mr. Lewis maintains that this standard conflicts with the general test for ineffective assistance of counsel established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The Court doesn't see any conflict—the Seventh Circuit uses the same standard in

12

resolving claims of ineffective assistance of appellate counsel, *see, e.g.*, *Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015)—but even if it did, that observation would not help Mr. Lewis here. Wisconsin courts use the clearly stronger standard when analyzing post-conviction motions filed under Wis. Stat. § 974.06. Thus, that standard is a matter of state law not reviewable in federal habeas. *See, e.g.*, *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003) ("Federal habeas corpus relief does not lie for errors of state law, and we are bound by the state court's interpretations of state law.") (citations omitted). The lack of reviewability obviates any need for harmless-error analysis.

*****

Because Mr. Lewis has failed to demonstrate cause to excuse his defaults, the Court need not reach the issue of whether he could establish prejudice. *See Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002) (citing *Henderson v. Cohn*, 919 F.2d 1270, 1273 (7th Cir. 1990)).

### 2. Miscarriage of justice

To establish "that a miscarriage of justice would result if habeas relief is foreclosed, the petitioner must show that he is actually innocent of the offense for which he was convicted." *Lewis*, 390 F.3d at 1026 (citing *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995)). "The actual innocence gateway is narrow." *Gladney v. Pollard*, 799 F.3d 889, 896 (7th Cir. 2015). Mr. Lewis's "procedural default can be excused only if he 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial.'" *Gladney*, 799 F.3d at 896 (quoting *Schlup*, 513 U.S. at 316). In other words, Mr. Lewis "must show that 'in light of new

13

evidence, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *Gladney*, 799 F.3d at 896 (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)).

Mr. Lewis was convicted of four counts of sexually assaulting L.M.A. between August and December 2011. He was charged in Counts 1, 2, and 3 with assaulting L.M.A. in his mother's basement while L.M.A. and her family were staying there temporarily. Count 4 originally related to an assault that allegedly occurred when the family was staying at a friend's apartment. However, at trial, the State amended Count 4 to charge Mr. Lewis with assaulting L.M.A. while the family was staying at a motel. Mr. Lewis claims he is innocent of all four counts.

*Counts 1, 2, and 3*

Mr. Lewis maintains that the lack of forensic evidence corroborating L.M.A.'s allegations demonstrates that he did not commit the basement assaults. *See* Pet'r's Br. 20–23. The actual-innocence gateway is available only if the petitioner "presents evidence not previously considered." *Gladney*, 799 F.3d at 896. At trial, the jury was told that no male DNA was found and that the physical examination of L.M.A. was inconclusive as to whether she was sexually assaulted. *See, e.g.*, Exhibit 6 to Resp't's Br., ECF No. 21-6 at 68–71, 79–80, 110–21; Exhibit 7 to Resp't's Br., ECF No. 21-7 at 6–19. Mr. Lewis's actual-innocence claim therefore fails as to Counts 1, 2, and 3 because it is not based on any "new" evidence.

Mr. Lewis attempts to make up for this fatal deficiency in his reply brief, asserting that the jury wasn't presented other "reliable" evidence, including: a

14

detective's police report that supposedly contradicted his trial testimony, an explanation from the nurse who performed the exam as to how she forgot critical facts, reports showing that the last assault allegedly occurred just days prior to the exam, and testimony from an expert and lay witnesses who never testified because Mr. Lewis's lawyer subpoenaed them for the wrong dates. *See* Pet'r's Reply 13–25. Because these arguments were made for the first time in Mr. Lewis's reply brief, the Court does not need to consider them. *See Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 768 (7th Cir. 2018) ("Arguments raised for the first time in a reply brief are waived.") (citation omitted).

Nevertheless, it is highly unlikely that this evidence—ignoring any problems of admissibility—would have impacted the jury's decision. The evidence, at best, would have added some doubt to the State's case, but it does not contradict L.M.A.'s reports of multiple, specific incidents of sexual assault by Mr. Lewis. It is undisputed that Mr. Lewis had the opportunity to assault L.M.A. during the period in question, as he spent significant time with her, including sleeping in the same room for several nights. Also, the nurse practitioner who examined L.M.A. testified that she rarely encountered specific injuries or specific findings during her sexual assault exams. Exonerating DNA evidence could support an actual-innocence claim.

The lack of forensic evidence, however, is not inconsistent with an assault and does not constitute strong enough evidence of innocence.

*Count 4*

At trial, Mr. Lewis claimed that he couldn't have sexually assaulted L.M.A. at the motel because he was incarcerated at the time the family was staying there. *See* Exhibit 8 to Resp't's Br., ECF No. 21-8 at 95. He repeats the same argument here, *see* Pet'r's Br. 19–20, but this time he has proof beyond just his word, namely: the Salvation Army letter, the Midpoint Motel receipt, and the booking records from Milwaukee County Jail. *See* Resp't's Br. Ex. 11. These records, however, likely would not have affected the jury's verdict on Count 4 because they do not foreclose the possibility of Mr. Lewis committing the motel assault.

Considering all the evidence—that presented at trial and the "new" records submitted here—a jury could reasonably conclude that Mr. Lewis sexually assaulted L.M.A. the first night in the motel. Mr. Lewis was not incarcerated the entire time L.M.A. and her family were staying in the motel. Rather, he was booked into the Milwaukee County Jail on September 3, 2011, the day after he rented the motel room for L.M.A. and her family.

This timeline is consistent with the trial testimony. L.M.A.'s mother stated that she and her children lived at the Midpoint Motel for a few weeks during the summer of 2011. *See* Resp't's Br. Ex. 8, ECF No. 21-8 at 13–16, 25, 34–35, 39–40. She further testified that Mr. Lewis was at the motel the first day they were there and that she left L.M.A. alone with him. *See id.* at 16, 35, 38–39. Moreover, Mr.

Lewis admitted that he spent the evening of September 2 at the Midpoint Motel with L.M.A. and her family. *See id.* at 95–96. Although Mr. Lewis denied ever being alone with L.M.A, *see id.* at 96, the jury clearly did not find him credible. And there is no reason to think Mr. Lewis's new evidence would alter that determination.

Mr. Lewis contends that L.M.A.'s mother must have been referring to an earlier time the family stayed at a motel. *See* Pet'r's Reply 25–29. At trial, L.M.A.'s mother stated that she picked L.M.A. up from her school bus, went to the motel for a bit, and then headed to work—her hours were 10:00 p.m. to 6:45 a.m.—leaving L.M.A. alone with Mr. Lewis. *See* Resp't's Br. Ex. 8, ECF No. 21-8 at 23, 37–39. According to Mr. Lewis, the events described by L.M.A.'s mother couldn't have happened in September 2011. To support this argument, Mr. Lewis has submitted an affidavit from Anthony H. Dickey, who claims that he was the one who dropped off Mr. Lewis, L.M.A., and L.M.A.'s family at the Midpoint Motel on September 2, 2011. *See* Exhibit 105 to Pet'r's Reply, ECF No. 23-1 at 53–54. Mr. Lewis further points out that September 2 was a Friday and that L.M.A.'s mother didn't work on Friday nights. *See* Pet'r's Mot. to Am. 1.

Mr. Lewis's argument is unconvincing for three reasons. First, the Court does not need to consider these arguments, as they were raised for the first time in Mr. Lewis's reply brief and supplement to his reply and so Mr. Boughton has not had an opportunity to respond to them. Second, Mr. Lewis's assertion about the work schedule of L.M.A.'s mother is not supported by any evidence. Third, this evidence does not establish that it is more likely than not that no reasonable jury would have

17

found Mr. Lewis guilty of Count 4. At best, this evidence shows that L.M.A.'s mother may not have been referring to the time the family stayed at the Midpoint Motel in September 2011. But the jury already knew that, given how frequently the family moved, L.M.A.'s mother couldn't recall exact dates of where she and her children lived during this time period. This lack of temporal precision is why Mr. Lewis was charged with committing the motel assault sometime between August and December 2011, rather than on a specific date. Mr. Lewis has not provided any evidence to support his claim that the assault occurred outside that charging period. Even if the Court were to accept this argument, it would only establish legal, not factual, innocence.

Mr. Lewis similarly argues that his new evidence shows that he couldn't have assaulted L.M.A. every day that the family lived in the motel, as she claimed at trial, *see* Resp't's Br. Ex. 7, ECF No. 21-7 at 43–44, 50, 52–53, 71–77; Resp't's Br. Ex. 8, ECF No. 21-8 at 6, 10, because he was there only the first day. That may be true. But the State didn't need to prove that Mr. Lewis assaulted L.M.A. every day in the motel for him to be found guilty of Count 4. All the State needed to prove was that Mr. Lewis assaulted L.M.A. at a motel in the City of Milwaukee sometime between August 1, 2011, and December 29, 2011. The jury was therefore free to only partially believe L.M.A.'s testimony. Put another way, the fact that Mr. Lewis could have assaulted L.M.A. on only one day rather than ten days does not establish that he never assaulted her in the motel.

18

## III. Conclusion

Because all of Mr. Lewis's claims were rejected on adequate and independent state-law procedural grounds and Mr. Lewis has failed to offer a sufficient excuse for that default, this Court is precluded from reaching the merits of those claims here.

## IV. Certificate of Appealability

There is one final matter to address. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." *See* Rule 11(a) of the Rules Governing Section 2254 Cases. A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Court finds that Mr. Lewis is not entitled to a certificate of appealability. Mr. Lewis has not demonstrated "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Of course, Mr. Lewis has a right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW, THEREFORE, IT IS HEREBY ORDERED** that James Arnold Lewis's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody, ECF No. 1, is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Request for an Evidentiary Hearing, ECF No. 18, is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Amend Reply Brief, ECF No. 24, is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Correct, ECF No. 25, is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2019.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge